UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDRA BENDIT,

                    Plaintiff,

           v.

CANVA, INC., and CANVA PTY. LTD.,

                  Defendants.

23-CV-473 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Alexandra Bendit, a fashion model, alleges that after entering into a contract for a photoshoot, her images were used—against her wishes—to advertise pornographic material, genital herpes treatments, and sex toys, among other troubling content, thereby resulting in her reputation as a model being severely impacted. She brought this action in New York State Court, asserting causes of action for (1) breach of contract, (2) fraudulent inducement, (3) defamation, (4) invasion of privacy under New York Civil Rights Law §§ 50, 51, and (5) intentional infliction of emotional distress; Defendants Canva, Inc. and Canva Pty. Ltd., then removed the action to this Court. Now before the Court are Plaintiff's motion to remand, *see* Dkt. 14, and Defendants' motion to dismiss, brought under both Rules 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim, *see* Dkt. 18.

For the reasons which follow, Plaintiff's motion to remand and Defendants' motion to dismiss for lack of personal jurisdiction are each denied, and Defendants' motion to dismiss for failure to state a claim is granted, albeit without prejudice.

## BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of the present motion.  *See Stadnick v. Viving Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  Plaintiff Alexandra Bendit is a professional fashion model whose image and work has appeared in numerous publications and advertisements throughout the world.   Compl. ¶ 6.   Her brand, reputation, and ability to work as a model are correlated with use of her image, and how her image is presented to the public.  *Id*. ¶ 11.   In 2020, amidst the COVID-19 pandemic, the modeling industry faced significant challenges; accordingly, Ms. Bendit agreed to participate in a half-day photoshoot for the very modest sum of $60 to $100.  *Id*. ¶ 7.   She alleges that she was assured by "Canva"—the Complaint does not specify which of the two Defendants "Canva" refers to, or whether it is meant to encompass them both—that her images would not be used in advertisements or websites of a sexual nature, and that her photography release provided that Canva could not use or permit others to use her image for pornographic or defamatory purposes.  *Id*. ¶ 8.   Plaintiff alleges that a separate entity, Pexels, included a list, in bold font, which indicated how any images taken could not be used.  *Id*. ¶ 9.

Although they are not attached to the Complaint, Plaintiff alleges that her photographs have now been used in advertisements and websites promoting sex-based and pornographic material and products, or in reference to, among other things, genital herpes, sex addiction, and "Chinese hook-up websites."  *Id*. ¶ 12.   As a result, Plaintiff's ability to continue working as a model has been placed in jeopardy.  *Id*.   Plaintiff requested that "Canva" assist her in taking down or condemning any improper use of her images, but alleges that it ignored her requests.  *Id*. ¶ 13.

Plaintiff filed her Complaint in New York Supreme Court on December 16, 2022, and Defendants removed to this Court on January 19, 2023.  *See* Dkt. 1.  Plaintiff then filed a motion

to remand, *see* Dkt. 14, and Defendants moved to dismiss the Complaint, *see* Dkt. 18.

## LEGAL STANDARD

"Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *Torres v. Sears Holdings Corp.*, 2011 WL 3462775, at *2 (S.D.N.Y. Aug. 5, 2011) (citing *Smith v. Kinkead*, 2004 WL 728542, at *1 (S.D.N.Y. Apr. 5, 2004)). "A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a)." *Whitaker v. Am. Telecasting Inc*., 261 F.3d 196, 205–06 (2d Cir. 2001) (cleaned up). "The burden of proving federal removal jurisdiction … is on the party seeking to preserve removal, not the party moving for remand." *Woodley v. Mass. Mut.*, 2008 WL 2191767, at *2 (S.D.N.Y. May 23, 2008) (cleaned up).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiffs' favor, *see Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

3

do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted).  Courts may consider documents incorporated into the complaint when analyzing motions brought under Rule 12(b)(6), including "any written instrument attached to [the complaint] as an exhibit, materials incorporated in [the complaint] by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (cleaned up).

## DISCUSSION

## I.      Removal Jurisdiction Is Proper Given the Diversity of the Parties

For diversity jurisdiction to exist, there must be "complete diversity" of citizenship between the plaintiff and the defendants, and the amount in controversy must exceed $75,000.  *See* 28 U.S.C. § 1332(a); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (explaining the "complete diversity" requirement).  "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile."  *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).  For corporations, like Defendants here, citizenship is determined based on both their place of incorporation and their principal place of business.  *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that a corporation's "principal place of business" is its "nerve center … [which] should normally be the place where the corporation maintains its headquarters").

It is undisputed that Plaintiff Bendit is a citizen of New York by virtue of her residence in the state.  *See* Mot. at 2; Opp. at 2.  Defendant Canva, Inc. is a corporation incorporated in the state of Delaware with its headquarters and principal place of business in Sydney, Australia.  *See* Dkt. 3, Rule 7.1 Corporate Disclosure Statement at 2.  Defendant Canva Pty. Ltd. is incorporated and maintains its headquarters and principal place of business in Sydney, Australia.  *See id*.  Even taking into account Canva, Inc.'s dual citizenship in both Delaware and Australia, complete

diversity therefore exists among the parties.  This is because the action involves either "citizens of a state" (namely, New York) against "citizens or subjects of a foreign state" (Australia), 28 U.S.C. § 1332(a)(2), or "citizens of different States" (New York and Delaware) "in which citizens or subjects of a foreign state" (Australia) "are additional parties," 28 U.S.C. § 1332(a)(3).

The cases Plaintiff relies upon in her motion to remand are inapposite here.  In *Universal Licensing Corp. v. Paola del Lunga S.p.A.*, for instance, the court merely concluded that, where the "*only* parties are foreign entities, or where on *one side* there are citizens and aliens *and on the opposite side* there are only aliens," diversity does not exist for subject matter jurisdiction purposes.  293 F.3d 579, 581 (2d. Cir. 2002) (emphasis added).  In that case, because the plaintiff was a Korean corporation and the defendants were each Italian citizens, the action "was solely between foreign parties," such that diversity was lacking.  *Id.* at 582.  Similarly, *IGY Ocean Bay Properties Ltd. v. Ocean Bay Properties I Ltd*, 534 F. Supp. 2d 446 (S.D.N.Y. 2008) involved foreign citizens on both sides of the dispute.  Under any analysis of the parties' citizenship here, Plaintiff Bendit is a citizen of New York.  *See* 28 U.S.C. §§ 1332(a)(2), (3).[1]  Removal jurisdiction over the action is thus proper, and Plaintiff's motion to remand denied.

## II.      Personal Jurisdiction is Proper

Having established that subject matter jurisdiction is proper, the Court next turns to Defendants' motion to dismiss.  First, Defendants first move to dismiss for lack of personal

---

[1]      Similarly, Plaintiff's arguments related to whether Defendants are subject to *personal* jurisdiction in New York by virtue of the state's long arm statute, *see* Mot. at 9–11, are irrelevant to whether *subject matter* jurisdiction is proper in this Court by way of the parties' diverse citizenship and the amount in controversy.  *See U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997) ("[T]he concepts of subject matter jurisdiction [and] personal jurisdiction … address different concerns limiting the authority of a court to entertain a given case.  Subject matter jurisdiction is concerned with the kinds of cases the federal district courts are empowered to decide … Personal jurisdiction, in contrast, is concerned with the relationship of a given defendant to the particular geographic area in which a case is brought.").  Indeed, Defendants themselves contest personal jurisdiction in their motion to dismiss, and the Court separately addresses personal jurisdiction in its analysis of that motion under Rule 12(b)(2), *see infra* at Section II.

5

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  For the reasons set forth below, the Court concludes that the Complaint plausibly alleges facts warranting the exercise of specific personal jurisdiction over Defendants by way of New York's Long-Arm Statute, and the motion to dismiss for lack of personal jurisdiction is therefore denied.

In order to ensure that the exercise of personal jurisdiction is proper, a district court must determine, first, whether there is a statutory basis for the exercise of such jurisdiction.  *See BWP Media USA Inc. v. Hollywood Fam. Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014).  In New York, there are two potential statutory bases for personal jurisdiction: (1) N.Y. C.P.L.R. § 301 provides the basis for general personal jurisdiction, and (2) N.Y. C.P.L.R. § 302, New York's so-called Long-Arm Statute, provides the basis for specific jurisdiction.  *See George Moundreas & Co. SA v. Jinhai Intelligent Mfg. Co Ltd.*, 2021 WL 168930, at *3 (S.D.N.Y. Jan. 18, 2021).  After determining whether a statutory basis exists for personal jurisdiction, a court must separately evaluate whether the exercise of personal jurisdiction comports with due process.  *See Brown v. Lockheed Martin Corp.*, 814 F.2d 619, 625 (2d Cir. 2016).

New York courts do not have general jurisdiction over Defendants here.  A corporation is only said to be "at home," and therefore subject to general jurisdiction, in its state of incorporation and the state of its principle place of business.  *BNSF Ry. Co. v. Tyrrel*, 581 U.S. 402, 413 (2017).  As the Complaint itself makes plain, neither Defendant is incorporated in New York, *see* Compl. ¶ 5,  and both Defendants maintain their principal place of business in Sydney, Australia, *see* Dkt. 3, Rule 7.1 Corporate Disclosure Statement at 2.  Regardless of the business that Defendants allegedly transact in New York, such activities do not, without more, establish *general* jurisdiction.  *See Aybar v. Aybar*, 156 N.Y.S.3d 104, 107 (N.Y. 2021) (registering to do business in New York does not constitute consent to the exercise of general jurisdiction by New York courts).

The Complaint plausibly alleges facts, however, giving rise to specific jurisdiction under New York's Long-Arm Statute.  That statute provides, in relevant part:

> a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to a person or property within the state … if he … regularly does or solicits business, or engages in any other persistent court of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state . . . .

N.Y. C.P.L.R. § 302(a).  "The test for specific jurisdiction is whether Defendant transacts any business in New York and, if so, whether this case arises from these business transactions." *Sandstone Springs, LLC v. Virag Distribution, LLC*, 617 F. Supp. 3d 159, 168 (W.D.N.Y. 2022) (citing *Ascento Capital, LLC v. MinervaWorks, LLC*, 2021 WL 2206487, at *4 (S.D.N.Y. June 1, 2021)).  For a case to arise from a Defendant's business activities in New York, the Second Circuit has instructed that "there must be an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).  Courts "look to the 'totality of the circumstances' to determine whether" a nondomiciliary transacts business in New York and "even a single New York business transaction may be sufficient, provided the cause of action arises 'out of the subject matter of the [transaction].'"  *Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007).

Here, accepting the allegations in the Complaint as true as the Court must upon a motion to dismiss, a contract between Plaintiff Bendit and Defendant Canva Pty. Ltd. was executed in New York, under a New York City address, and expressly states that it is governed by New York law. *See* Def. Mot., Ex. 3.  Moreover, the photoshoot of Ms. Bendit which was the subject of the

contract, itself, took place in Manhattan.   Under New York C.P.L.R. § 302(a)(1), then, the Complaint adequately alleges specific jurisdiction.   As the Second Circuit has instructed, "the overriding criterion necessary to establish a transaction of business [under § 302(a)(1)] is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."   *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (N.Y. 2007)).   And, as mentioned above, even "[a] single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1)."   *Id.* at 62.   Here, a contract executed in New York, with a New York resident, under New York law, for a photoshoot which then took place in New York City, satisfies Section 302(a)(1)'s requirements.   Indeed, in a case akin to this one, Judge Stanton found specific personal jurisdiction over Kendall Jenner in New York to be proper, where she had entered into a modeling contract which was the subject of the alleged breach of contract cause of action in the Complaint. *See Liu Jo S.A. v. Jenner*, 2022 WL 4386260, at *3–4 (S.D.N.Y. Sept. 22, 2022); *see also id.* at *4 (emphasizing, in evaluating the "totality of the circumstances," that it was significant that the modeling contract was drafted in New York by the parties, and that payments involved a New York account).[2]

Having found specific jurisdiction to be proper in New York, the Court has little difficulty further concluding that the exercise of personal jurisdiction here comports with due process.   *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) ("If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause."); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d

---

[2]       Because the Court concludes that specific jurisdiction is proper by way of Section 302(a)(1) given the plain terms of the contract, and the resulting business transacted by Defendant in New York with the photoshoot which was bargained-for in the contract, it does not separately address Plaintiff's alternative theories for specific jurisdiction. *See* Pl. Opp. at 9–10 (alternatively arguing that Defendants committed a "tortious act" within the State of New York).

Cir. 2006) (reasoning that "the constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements").  The due process analysis has two related components: the "minimum contacts" inquiry, by which the Court determines whether the defendant has had sufficient contacts with the forum state, *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and the "reasonableness" inquiry, by which the Court asks whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case," *Chloé*, 616 F.3d at 164.  Both tests are satisfied here.  The Complaint plausibly alleges that Defendants had sufficient minimum contacts with, and thereby availed themselves of, New York as a forum by, among other things, contracting for a New York photoshoot in a contract expressly governed by New York law.  *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (noting that jurisdiction is proper "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum"); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997) (same).

Accordingly, the Court determines that the exercise of personal jurisdiction over Defendants in this action is proper, and therefore denies their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

**III.    The Complaint Fails to State Claims Upon Which Relief Can be Granted**

Defendants separately move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).  For the reasons which follow, the Court agrees with Defendants' arguments related to each of the causes of action for: (1) breach of contract, (2) fraudulent inducement, (3) defamation, (4) invasion of privacy under New York Civil Rights Law, and (5) intentional infliction of emotional distress.  Accordingly, the Court grants the motion to dismiss under Rule

12(b)(6) in its entirety.  That said, the Court does not believe that any amendment to the pleadings would necessarily be futile.  Were Plaintiff to allege that Defendants orally modified the terms of the contract that she entered into, for instance—or that they somehow made binding assurances notwithstanding the terms of the photo release—it is at least conceivable that such allegations may survive a motion to dismiss.  Accordingly, the Court grants dismissal without prejudice, and Plaintiff shall have thirty (30) days to amend her Complaint, provided she has a good faith basis for doing so.

### A. Breach of Contract

Under New York law, to survive a motion to dismiss a breach of contract cause of action, a complaint must allege facts plausibly suggesting "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages."  *Habitzreuther v. Cornell Univ.*, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 25, 2015); *see also Fuji Film USA, Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (applying same).  Here, because the Complaint's allegations suffer in two major respects, it fails to state a claim for breach of contract.

First, the Complaint's allegations related to any purported contract between the parties are simply too generalized and conclusory in nature.  The Complaint alleges that Ms. Bendit agreed (with whom, the Complaint does not say) to participate in a half-day photoshoot for compensation in the range of $60 to $100, *see* Compl. ¶ 7, that she then entered into an unspecified contract, *see id*. ¶ 19 ("Plaintiff and Defendant had a contract."), and that "Defendant breached this contract by using Plaintiff's image for pornographic or defamatory uses," *id*. ¶ 21.  But the Court is left to guess about the specific nature of any terms which form the basis of an enforceable contract between Plaintiff and Defendants, and to fill in the blanks to surmise that Defendants were

somehow in breach of this unspecified agreement.  *Contra Iqbal*, 556 U.S. at 679 (observing that any conclusory framework in a complaint "must be supported by factual allegations").  And while the Complaint vaguely references licensing terms by a third party, Pexels, on its own website, *see* Compl. ¶ 9; Ex. 5 at 1, Plaintiff does not plausibly allege how those terms—posted by a third party distinct from Defendants—plausibly gives rise to a contract between Plaintiff and either Canva, Inc. or Canva Pty. Ltd.  *See, e.g., Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *4–5 (S.D.N.Y. Dec. 22, 2003) (dismissal appropriate where plaintiff failed to allege facts showing that a contract existed with the defendant).  Similarly, while Plaintiff references a one-page release that she signed at an August 2020 photoshoot, *see* Compl. ¶ 8, this release does not specify any substantive obligations by Defendants Canva, Inc. or Canva Pty. Ltd. which could plausibly support the conclusion that they were in breach, *see* Defs' Mot., Ex. 3 (Release).  In her opposition to the present motion, Plaintiff now appears to suggest that Defendants somehow agreed to be bound by the licensing terms on Pexels' website; to the extent that she can plausibly allege that such assurances formed a binding contract, such an allegation would certainly come closer to stating a claim for relief in an amended complaint.

As it stands, however, generalized and conclusory allegations like the ones presented in the present Complaint are insufficient to support a breach of contract cause of action upon a motion to dismiss.  *See Fuji Poto*, 669 F. Supp. 2d at 412–13 ("A breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal … A claim for breach of contract cannot be sustained by a conclusory statement that the accused breached a contract.").

Second, in any event, even if the Court were to accept that the release signed by Plaintiff with the photographer forms the basis of the contract claim, the express terms of that release

foreclose her breach of contract theory as a matter of law.  That release provides that Plaintiff agreed to "release, discharge, and agree[d] to hold harmless" Defendant Canva Pty. Ltd. "from any liability arising from use of the Content [photographs]," and further agreed that she would "make no claim" against Canva Pty. Ltd. "in respect of the Content [photographs]."  *See* Compl., Ex. 3.[3]  The presence of such an explicit waiver provision, as here, precludes a breach of contract claim.  *See, e.g., Psenicska v. Twentieth Century Fox Film Corp.*, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 409 F. App'x 368 (2d Cir. 2009) (dismissing claims based on allegedly unflattering depictions in a film because plaintiffs had signed releases with explicit waiver clauses waiving their rights to bring claims against the defendants related to the film).  Instead, where a "release's language is broad and nothing suggests it is inapplicable to the case at hand," courts in this district will "apply the release as written."  *Barshay v. Naithani*, 2023 WL 2051170, at *9 (S.D.N.Y. Feb. 16, 2023).  Any amendment to the pleadings must thus address the applicability of these express release provisions in order to survive dismissal.

In the absence of plausible allegations supporting a breach of contract claim, Defendants' motion to dismiss this cause of action is granted.

### B.  Fraudulent Inducement

To state a claim for fraudulent inducement, a plaintiff must allege: "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury."  *Computerized Radiological Servs. V. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 730 (N.Y. App. Div. 1980)); *see also Eaves v.*

---

[3]        Although the release names Canva Pty. Ltd., it nowhere names Defendant Canva, Inc.  *See* Ex. 3.

*Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011).  Rule 9(b)'s heightened pleading standard for fraud further provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To comply with these requirements under Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  A plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *Id.*

The Complaint here fails to meet the heightened pleading requirements set forth in Rule 9(b), as required to state a claim for fraudulent inducement.  Although it asserts, in conclusory terms, for instance, that "Defendant made a material misrepresentation or omission of material fact, as to where Plaintiff's image would appear and be used for" and that "Defendant represented to Plaintiff that her image would not be used for any defamatory or pornographic uses," Compl. ¶¶ 24–25, such allegations fall far short of specifically pleading a "speaker, location, or method of communication" for the purported fraudulent statements, *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020).  Indeed, at base, although the Complaint should at the very least specify which of Defendants Canva, Inc. or Canva Pty. Ltd. made the allegedly fraudulent representations, it fails to do so—instead referring vaguely to "Defendant" (singular) or "Canva." *See* Compl. ¶¶ 1, 5; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'")  Moreover, the Complaint lacks any detail whatsoever as to when, where, and how any alleged fraudulent statements were made.  *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 142–44 (S.D.N.Y. 2019).

Nor may Plaintiff salvage her fraudulent inducement cause of action by attributing statements contained in the Pexels Terms of Service to Defendants, as she attempts to do, without plausible factual allegations in support.  *See* Compl. ¶ 9; *New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 235 (S.D.N.Y.) (holding that a "fraudulent inducement claim lies only where the defendant itself made the relevant misrepresentation or omission.").  Lastly, the Complaint fails to allege the scienter necessary to state a claim for fraudulent inducement, as there are no factual allegations supporting a "strong inference of fraudulent intent," such as "strong circumstantial evidence of conscious misbehavior or recklessness," *Rostami v. Open Props, Inc.*, 2023 WL 137748, at *3 (S.D.N.Y. Jan. 9, 2023).  Instead, the Complaint relies upon "threadbare recitals" of the elements, *Miller v. Holtzbrink Publishers, LLC*, 2009 WL 528620, at *4 (2d Cir. 2010), in alleging that the conduct was "fraudulent and intentional," Compl. ¶¶ 28, 30.

Accordingly, the motion to dismiss the fraudulent inducement cause of action is granted. To the extent that Plaintiff seeks to supplement her Complaint's allegations—as she improperly attempts to do in her opposition to the motion to dismiss by attaching Instagram correspondence, *see* Pl. Opp., Ex. 1—she is granted leave to amend provided she has a good faith basis to do so.

### C.  Defamation

Defendants next move to dismiss Bendit's cause of action for defamation.  To allege defamation, a Complaint must include: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020).  A plaintiff must specifically identify the "particular words complained of," the publisher of the statements, the time in which they were made, and the third parties to whom the statements were allegedly published.  *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d

763, 790 (S.D.N.Y. 2019); *see also* N.Y. C.P.L.R. 3016(a).

Although the Complaint here refers to offending content in general terms—repeatedly alleging that Bendit's likeness has been used in advertisements and websites "in reference to things like genital herpes, sex addiction, or as a porn star or dubious Chinese hook-up websites," Compl. ¶ 12; *see also id*. ¶¶ 2, 27—it does not offer the kind of specificity required to state a claim for defamation. *See Neal v. Asta Funding, Inc.*, 2014 WL 3887760, at *3–4 (S.D.N.Y. June 17, 2014) (holding, "in the absence of more detailed pleading" that allegations of an anonymous caller making unspecified remarks did not state a claim for defamation).   None of the purportedly defamatory advertisements or websites in question are identified by date, author, or publication, nor, curiously, are any of the advertisements themselves attached to the Complaint.   Under such circumstances, Defendants have little way of knowing the "particular words complained of," N.Y. C.P.L.R. 3016(a), and Plaintiff thus fails to plausibly allege facts to state a claim that she has been defamed.   *See Nickerson v. Commc'n Workers of Am. Local 11171*, 2005 WL 1331122, at *7 (S.D.N.Y. May 31, 2005) (dismissing claim for defamation against unspecified "defendants" alleged to have made "unfounded" statements about plaintiff); *Alvarado*, 404 F. Supp. 3d at 790 (holding that a claim for defamation must identify the "particular words complained of").   Indeed, Plaintiff's opposition brief itself underscores that a defamation claim must include precise allegations to survive a motion to dismiss, as the cases it cites involved far more specific allegations of the purportedly defamatory statements.   *See, e.g., Khalil v. Fox Corp.*, 2022 WL 4467622, at *2–3 (S.D.N.Y. Sept. 26, 2022) (motion to dismiss denied where plaintiff identified offending tweets and on-air statements with specific quoted language, dates, and speakers).   The Complaint's failure to identify the allegedly defamatory statements at issue here precludes Bendit's cause of action for defamation.   *See Alvarado*, 404 F. Supp. 3d at 790–91.

Moreover, even if the purportedly defamatory statements were identified with sufficient particularity, the Complaint would still fail to state a claim for defamation, as Bendit concedes that she does not and cannot allege that Defendants themselves published any of the offending advertisements. *See* Opp. at 22 ("[I]t is not clear what Canva's role was in publishing the images on various websites and publications."). This is independently fatal to any defamation claim. *See Khan v. New York Times Co.*, 269 A.D.2d 74, 80 (N.Y. App. Div. 2000) ("It is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish.").

Defendants' motion to dismiss the defamation claim is therefore granted.

**D.  Invasion of Privacy Under New York Civil Rights Law §§ 50, 51**

The Complaint's cause of action for invasion of privacy, brought under Sections 50 and 51 of New York's Civil Rights Law, suffers from many of the same pleading deficiencies identified for the primary causes of action above. The statute establishes a "right of privacy" and forbids the "use for advertising purposes, or for the purpose of trade, the name, portrait, or picture of any living person without having first obtained the written consent of such person," N.Y.C.R.L. § 50, and creates a private right of action for certain violations of this statutory privacy right, *id*. § 51. To state a claim, a plaintiff must demonstrate: (1) the use of her name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without her written consent. *See Wilson v. Veritas Consulting Grp. Inc.*, 2022 WL 4227145, at *2 (S.D.N.Y. Sept. 13, 2022).

The Complaint fails to plausibly allege facts giving rise to several of the required elements of the cause of action. As to the second element, for instance, the Complaint nowhere alleges that any purportedly offending advertisements were actually distributed in New York. Rather, it alleges only that they were "published and republished … in numerous advertisements and

websites throughout the world."  Compl. ¶ 34.  This is plainly insufficient.  *See Ratermann v. Pierre Fabre USA, Inc.*, 2023 WL 199533, at *7 (S.D.N.Y. Jan. 17, 2023) (describing a Section 51 claim that failed to allege use of the plaintiff's likeness in New York).  As to the first and third elements, the Complaint fails to allege how Defendants Canva, Inc. and Canva Pty. Ltd. "used" her images for any commercial advertising, as required.  Notably, the Complaint does not even allege that either Defendant is an advertiser; rather, it makes reference to third parties who used Plaintiff's image in advertisements in violation of another third party, Pexel's, stated terms of use.  But such a theory does not state a claim under New York's privacy statute.  As Judge Woods found in *Tesfay v. HanesBrands Inc.*, where a plaintiff model gave a defendant written consent for use of her image but later complained of the use of that image by third parties, a complaint which "fail[s] to allege that [the defendant] made use of her image as required by the first element of a Section 51" cause of action, will "fail[] to state a claim for breach of Section 51."  2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019); *see also Ratermann*, 2023 WL 1995533, at *7 (dismissing privacy claim under New York Civil Rights Law where the plaintiff "fails to allege, except in conclusory fashion, that [the defendant] was involved in any of the impermissible uses of her likeness").  And, perhaps most significantly, the Complaint fails to allege facts which would satisfy the fourth element of a Section 51 claim—that is, that Defendants published Plaintiff's image "without having first obtained [her] written consent."  N.Y.C.R.L. § 51.  Instead, as described previously, Plaintiff acknowledges that she voluntarily entered into a written release expressly granting Defendant Canva Pty. Lt. broad rights to "use and exploit" her image "for any purpose," and further waived her rights to bring claims against Defendant Canva Pty. Ltd. premised on the use of those same images.  *See* Def. Mot., Ex. 3 (Release).

Accordingly, the motion to dismiss the invasion of privacy cause of action brought under

New York Civil Rights Law §§ 50 and 51 is granted.

**E. Intentional Infliction of Emotional Distress**

Finally, Defendants move to dismiss Bendit's cause of action for intentional infliction of emotional distress ("IIED").  The tort of IIED has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.  *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute [IIED]," *id*., and whether the conduct complained of reaches this threshold is, in the first instance, for the court to decide as a matter of law, *see Cavallaro v. Pozzi*, 28 A.D.2d 1075, 1078 (N.Y. App. Div. 2006).  The kind of conduct giving rise to IIED causes of action must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Davydov v. Youssefi*, 205 A.D.3d 331 (N.Y. App. Div. 2022).  As another court in this district observed, "[t]he standard for extreme and outrageous conduct is extremely difficult to satisfy." *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998); *see also Perry v. Burger King Corp.*, 924 F. Supp. 548, 553 (S.D.N.Y. 1996) (describing the standard as "extraordinarily strict"). Rare examples of conduct forming the basis of a valid IIED claim include luring women to travel to New York City where they could be drugged, beaten, and violently sexually assaulted, *see Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018); a father sexually assaulting his 11-year-old stepdaughter, *see Laure Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52 (2d Dep't 1990); and intentionally mishandling cremated human remains, *see Roach v. Stern*, 252 A.D.2d 488 (N.Y. App. Div. 1998).  In short: under New York law, the tort of intentional infliction of emotional distress is "extremely disfavored," *Durant v. A.C.S. State & Local Solutions Inc.*, 460 F. Supp. 2d

494, 499 (S.D.N.Y. 2006), and courts are "extremely reluctant" to find that its first element of 'extreme and outrageous conduct' has been satisfied, *Kamdem-Ouaffo v. Balchem*, 2018 WL 4386092, at *15 (S.D.N.Y. Sept. 14, 2018).

The facts alleged in the Complaint simply do not rise to the level required to state a claim for IIED.  Indeed, Plaintiff has largely only asserted conclusory allegations which track the required elements of an IIED claim.  *See* Compl. ¶¶ 56–60.  But simply alleging that "Defendant's conduct was extreme and outrageous" does not make it so—or even plausible.  *Searles v. United States*, 2022 WL 2829912, at *6 (S.D.N.Y. July 20, 2022); *see also id*. ("Merely stating that the conduct is extreme and outrageous and caused mental suffering, embarrassment, and humiliation without 'specific facts or circumstances' to support plaintiff's allegations 'fails even the liberal pleading standard of Rule 12(b)(6).'").  Nor does the Complaint allege that Defendants engaged in anything like the kind of "deliberate and malicious campaign of harassment or intimidation" that courts in this Circuit have found to make out an IIED claim.  *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009).  While the Complaint alleges that "Canva ignore[d]" Bendit's request for "assistance" to remove the allegedly offending imagery from websites and advertisements, Compl. ¶ 13, Defendants are not alleged to have actually published the advertisements in question—let alone to have done so maliciously in order to harass or intimidate Ms. Bendit.  And courts have routinely held that a defendant's alleged failure to intervene on the plaintiff's behalf with third party wrongdoers cannot form the basis for an IIED claim.  *See, e.g.*, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) (dismissing IIED claim and reasoning an app operator had no obligation to remove impersonating profiles).

The IIED claim also fails for the independent reason that it is duplicative of the Complaint's claim for defamation.  "IIED claims are routinely dismissed when the underlying allegations

duplicate those of a defamation claim." *Zuckerbot v. Lande*, 75 Misc. 3d 269, 299–300 (N.Y. Sup. Ct. 2022); *see also Restis v. American Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729–30 (S.D.N.Y. 2014).   And here, the Complaint's allegations supporting the IIED and defamation causes of action are one and the same: Plaintiff alleges that "Canva" allowed purportedly offending uses of her image by non-party actors in certain sexualized advertisements, and that this use injured her reputation in the modeling community and caused "humiliation and embarrassment."  Compl. ¶ 38.  In the absence of allegations unique to an IIED cause of action, the claim "fall[s] entirely within the ambit of the defamation claim" and must be dismissed. *Restis*, 53 F. Supp. 3d at 729–30; *see also Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (holding that New York tort claims are barred when they are duplicative of a defamation claim  because the claimed injury flows from the alleged effect on the plaintiff's reputation).

For the reasons stated above, Defendants' motion to dismiss the IIED cause of action is therefore granted.

### F.  Leave to Amend

Whether to grant leave to amend a complaint is committed to the "sound discretion of the district court."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint."  *Obra Pia Ltd. v. Seagrape Inv'rs LLC*, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021).  This is especially true on the Court's first ruling on a motion to dismiss.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").  "Granting leave to amend is futile," however, "if it appears that a plaintiff cannot

address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). Here, the Court finds that amendment to certain of Plaintiff's claims would not necessarily be futile. Among other things, for instance, although the Complaint as presently drafted does not include allegations that Defendants orally modified any contract entered into with Plaintiff by making additional assurances—such as being bound by the licensing terms on the Pexels website—such allegations might raise colorable claims as to several of Plaintiff's causes of action. Accordingly, dismissal without prejudice is the proper course here.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is denied; Defendants' motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2) is denied; and Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted in its entirety, albeit without prejudice. Plaintiff shall have thirty (30) days to amend her Complaint, provided she has a good faith basis for doing so. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 14 and 18.

SO ORDERED.

Dated:  August 22, 2023
        New York, New York

Hon. Ronnie Abrams
United States District Judge